## City of Bowling Green v. Peterson, By, &c.

(Decided May 22, 1923.)

### Appeal from Warren Circuit Court.

1. Municipal Corporations—City Liable to Pedestrian Injured by Falling of Rotten Pole.—Where an abandoned electric wire pole, which had been set between the traveled part of the street and the sidewalk, had become so rotten that its condition was obvious to casual inspection, and had been permitted to remain after the city officials could have observed its condition, the city is liable for injuries to pedestrian on the sidewalk when the pole fell and struck her, even though the fall was immediately caused by the pole being brushed with a load of fodder being hauled along the streets, since reasonably prudent persons might have anticipated vehicles passing along the street would come in contact with the pole.

2. Appeal and Error—Failure to Give Requested Instructions Defining Ordinary Care and Negligence Held Error, and Cause for Reversal.—In an action for personal injuries to pedestrian on a sidewalk, where the court had given instruction covering the substantial law of the case, it was error to fail to give defendant's requested instructions defining ordinary care and negligence, and the judgment for plaintiff must be reversed for such failure, though it was due to oversight.

W. B. GAINES and GAINES & GARDNER for appellant.

JOHN B. RODES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Reversing.

Della Peterson was awarded $2,000.00 in damages against the City of Bowling Green for a personal injury suffered by her as the result of a falling pole, which stood upon the streets of the city, striking her as she walked along the pavement of Twelfth street. She charged and proved to the satisfaction of the jury that

the cedar pole, which was about twelve feet high, eight or nine inches in diameter at the bottom and about six or seven inches thick at the top, had been standing on the street for many years, and that two or three years before it fell on her it had been abandoned and was performing no service whatever, either for the electric railroad company which installed it or for the city; that it became rotten at the ground and dangerous and likely to fall, and remained in that condition for many months before it fell on her, and that its rotten and dangerous condition was known to the city, or by the exercise of reasonable care on its part could have been known about it; that for about five or six inches up from the ground the pole was decayed all around and the wood had fallen away, thus showing its defective and weakened condition; that many of the city officials whose duty it was to inspect the streets and poles like the one in question passed and repassed the pole and could and would have discovered its weakened and dangerous condition had they exercised reasonable care to inspect the same long before it fell upon appellee.

The city denied its liability and insisted that the pole was caused to fall by a wagon coming in contact with it and but for such interference the pole would not have fallen and appellee would not have been injured. The evidence shows that the appellee with her little sister was on the way to church about ten o'clock in the morning; that they were walking along the pavement and that the pole, wholly unexpected to her, fell and struck her on the face and head, knocking her unconscious and injuring her severely. It is further shown that some men with a wagon loaded with green fodder piled on crosswise were passing the street next to the pole while some cattle ran in front; that the ends of the green fodder swiped against the pole which broke and fell. The pole stood on the edge of the traveled part of the street next to the sidewalk and was at a place at which reasonably prudent persons might have anticipated it would come in contact with persons driving and passing along that side of the street. If, as contended by appellee, the pole was so decayed on the outside as to show that it was in a weakened condition and this decayed condition had existed for such time as to have afforded the city, by the exercise of ordinary care, reasonable opportunity of knowing of the dangerous condition of the pole and the city failed to take it down or to protect the public from the dangers of its falling, the city was liable to the young lady in damages for

the injuries sustained, notwithstanding the corn on the wagon of a private citizen brushed against it and caused it to fall at the particular instant when appellee was passing. The record clearly presents a cause of action for negligence against the city.

The instructions are erroneous in that the court failed to define "ordinary care" and "negligence," after the appellant had requested such instructions. Instructions Nos. 1 and 2 substantially presented the law of the case, but the court should have given an instruction defining "ordinary care" and "negligence," especially when requested to do so. We have so held in various cases, including Covington Saw Mill & Mfg. Co. v. Drexilius, 120 Ky. 493. See also 14 R. C. L. 762.

This was the duty of the court when the defendant city offered an instruction upon that subject. No doubt the failure to give the instruction was mere oversight on the part of the trial judge. However this may be, the city was entitled to have such an instruction given to the jury. For the failure of the court to give this instruction the judgment must be reversed for proceedings not inconsistent herewith.

Judgment reversed.